**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Gray, | No. CV-20-01987-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Saks Fifth Avenue, | |
| Defendant. | |

At issue is Defendant Saks Fifth Avenue's Motion to Dismiss for failure to state a claim (Doc. 28, MTD), to which *pro se* Plaintiff Manuel Gray filed a Response (Doc. 31, Resp.) and Defendant filed a Reply (Doc. 32). For the following reasons, the Court will grant in part and deny in part the Motion.

**I.   Background**

This case arises out of a visit by Plaintiff and his friend to Defendant's department store in July 2020. (Doc. 9, Second Amended Complaint (Compl.) at 2–3.) Plaintiff alleges that, while shopping at Defendant's Camelback location, he was racially profiled and discriminated against by Defendant's staff on the basis of his African-American ethnicity. While Plaintiff's friend shopped in the fragrance department, Plaintiff browsed the men's department. In the process of returning to the fragrance department to reunite with his friend, Plaintiff passed by two of Defendant's employees. According to Plaintiff, these two employees glared at him and began to follow him at the behest of a white sales associate. The employees eventually confronted Plaintiff, invaded his personal space, accused him of

assaulting a member of Defendant's staff, and escorted him out of the store. (Compl. at 3-4.) Plaintiff contends that the employees' assault accusation was baseless, that they refused to discuss the matter or review any surveillance footage, that the employees' behavior was threatening and aggressive, and that Plaintiff suffered humiliation and feared for his life throughout the entire incident. Furthermore, Plaintiff alleges that he was denied the opportunity to continue shopping or to complete his prior transaction. (Compl. at 4.)

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). On a Rule 12(b)(6) motion, Rule 8(a) governs and requires that, to avoid dismissal of a claim, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A document filed by a *pro se* plaintiff is held to "less stringent standards" than pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In civil rights cases where the plaintiff appears *pro se*, the court must "construe the pleadings liberally." *Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1985). Nevertheless, even *pro se* litigants bear the burden of establishing a legal basis for the relief sought, and "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### III. Analysis

Plaintiff has asserted six different causes of action, including both federal civil rights claims and state tort claims. (Compl. at 5–7.) Defendant has moved that the complaint be dismissed in its entirety, arguing that Plaintiff has failed to state a claim as to each cause of action. (MTD at 1.)

#### A. Title II Claims

Plaintiff's first and fourth causes of action assert violations of Title II of the Civil Rights Act of 1964. (Compl. at 5–6.) Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). The statute defines "place of public accommodation" as lodgings, restaurants, and entertainment facilities. 42 U.S.C. § 2000a(b); *Ford v. Surprise Family Urgent Care Ctr., LLC*, No. CV 10-1920-PHX-SRB, 2011 WL 13137866, at *2 (D. Ariz. Sept. 6, 2011). Courts construe this list narrowly and have consistently declined to expand the scope of the statute beyond the facilities specifically enumerated. *Dragonas v. Macerich*, No. CV-20-01648-PHX-MTL, 2021 WL 3912853, at *4 (D. Ariz. Sept. 1, 2021).

Plaintiff alleges that Defendant's store is a place of public accommodation within the meaning of the statute and that Defendant violated the statute by denying Plaintiff the full and equal enjoyment of Defendant's facilities on the basis of Plaintiff's ethnicity. Because Defendant is a clothing retailer, not a restaurant, lodging, or entertainment facility, Defendant cannot be characterized as a place of public accommodation within the meaning of Title II. Consequently, the Court must dismiss Plaintiff's first and fourth claims, which rely wholly on alleged violations of Title II. Because Title II is not applicable to Defendant, the Court need not consider whether Plaintiff complied with the notice requirement set forth in 42 U.S.C. § 2000a-3(c).

### B. Negligence Claim

Plaintiff's second cause of action asserts that Defendant negligently breached a duty of care under Arizona's common law, and that this breach proximately resulted in damages. (Compl. at 5–6.) "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The threshold question of whether a duty exists is a matter of law to be decided by the Court. *Id.* Typically, duties of care arise from "special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id.* at 232. However, "[t]he relationship that gives rise to a duty of care may also be created by statute." *Alhambra Sch. Dist. v. Superior Court*, 796 P.2d 470, 474 (Ariz. 1990).

Plaintiff argues that the Title II statutory scheme imposed common-law duties on Defendant and that Defendant negligently "breached its duty as a place of public accommodation." (Resp. at 7.) Even assuming that Title II does create tort duties, however, Defendant is not a place of public accommodation within the meaning of Title II. *See supra* III(A). Therefore, Title II cannot be the basis of the common-law duty of care that Plaintiff alleges Defendant breached. As a result, the Court must dismiss Plaintiff's negligence claim.

### C. Claim Under 42 U.S.C. § 1981

Plaintiff's third cause of action asserts that Defendant violated 42 U.S.C. § 1981 by denying Plaintiff the right to make a contract on the basis of his ethnicity. (Compl. at 6.) Pursuant to § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." "A plaintiff asserting a § 1981 claim must initially identify an impaired contractual relationship under which the plaintiff has rights. The plaintiff must also plausibly allege that the defendant impaired that relationship on account of intentional discrimination." *Astre v. McQuaid*, 804 Fed. Appx. 665, 666 (9th Cir. 2020) (internal citations omitted).

Plaintiff has satisfied both requirements. Defendant argues that Plaintiff failed to allege an intent to shop, and even that Plaintiff "specifically alleges that he did not intend to shop or purchase anything." (MTD at 5.) This is a mischaracterization of the pleadings. In addition to invoking the generic activities of shopping and browsing, Plaintiff specifically claims that he "was denied the opportunity to continue shopping or complete prior transaction." (Compl. at 4.) Plaintiff does not describe in detail the prior transaction that he was unable to consummate, but this lack of specificity does not render his pleading deficient at this procedural juncture, especially given that courts must liberally construe the pleadings of *pro se* plaintiffs in civil rights cases. Because Plaintiff alleges a contractual relationship that Defendant impaired on account of intentional discrimination, the Court will not dismiss Plaintiff's § 1981 claim.

### D. Claim for Intentional Infliction of Emotional Distress

Plaintiff's fifth cause of action asserts a claim for intentional infliction of emotional distress ("IIED"), alleging that Defendant's "outrageous and unconscionable acts" caused deliberate shame and humiliation to Plaintiff. (Compl. at 6–7.) Conduct supporting a claim for IIED must be "extreme" and "outrageous." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (internal citations omitted).

> The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief. A plaintiff must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Mintz v. Bell Atl. Sys. Leasing Int'l*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (internal quotations and citations omitted).

Here, Plaintiff has alleged that Defendant's employees glared at, followed, and confronted him. Plaintiff further alleges that the employees spoke and acted aggressively, accused him of assaulting a staff member without probable cause, and unjustly forced him to leave the premises. (Compl. at 3–4.) In his Response, Plaintiff alleges that Defendant's employees used profanity and "[made] physical contact with Plaintiff when he was first

confronted." (Resp. at 8.) Even if the Court were to credit the additional factual allegations made in Plaintiff's responsive brief, Defendant's conduct does not rise to the level of extremity required to support a claim for IIED. *Garrow v. Earley*, No. 2 CA-CV 2018-0053, 2018 WL 6262149, at *2 (Ariz. Ct. App. Nov. 29, 2018) (holding that trial court properly dismissed an IIED claim based on allegations that a bank manager rudely and unfairly forced a woman to leave the premises in front of other patrons of the bank). Thus, the Court must dismiss Plaintiff's IIED claim.

### E. Claim for Loss of Consortium

Plaintiff's sixth and final cause of action asserts that the mental anguish engendered by Defendant's conduct deprived Plaintiff of consortium with his partner, family members, and co-workers. (Compl. at 7.) Plaintiff is not the correct person to bring this claim. Loss of consortium is a derivative claim that can only be brought by a party standing in close relationship to the person who suffered primary injury. *Bain v. Superior Court*, 714 P.2d 824, 828 (Ariz. 1986) ("In general, the claim for loss of consortium is personal to the spouse of the injured person."); *Villareal v. Department of Transp.*, 774 P.2d 213, 220 (Ariz. 1989) ("A child's claim for loss of consortium is derivative of the parent's claim for personal injuries."). Accordingly, the Court must dismiss Plaintiff's claim for loss of consortium.

## IV. Conclusion

Because Defendant is not a place of public accommodation within the meaning of Title II, Plaintiff's first, second, and fourth claims fail to state a claim upon which relief can be granted. Because the conduct complained of was not sufficiently extreme to support a finding of intentional infliction of emotional distress, Plaintiff's fifth claim also fails. Because Plaintiff cannot bring a claim for loss of consortium as to his own injuries, Plaintiff's sixth claim fails as well. However, because Plaintiff adequately alleged that Defendant intentionally and discriminatorily impaired a contractual relationship in violation of § 1981, Plaintiff's third claim will stand. Accordingly, the Court will dismiss Plaintiff's first, second, fourth, fifth, and sixth claims, but not his third claim.

1    **IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's
2  Motion to Dismiss. (Doc. 28.) The Court denies the Motion with regard to Count Three.
3  The Court grants the Motion with regard to Counts One, Two, Four, Five, and Six.
4    Dated this 23rd day of March, 2022.

*(signature)*
Honorable John J. Tuchi
United States District Judge