1  Brian R. Booker (SBN: 015637)
   Mary M. Curtin (SBN: 031973)
2  **GORDON REES SCULLY MANSUKHANI, LLP**
   Two North Central Avenue Suite 2200
3  Phoenix, AZ 85004
   Telephone: (602) 794-2471
4  Facsimile: (602) 265-4716
   bbooker@grsm.com
5  mcurtin@grsm.com

6  *Attorneys for Defendant Saks Fifth Avenue, LLC*

8  **IN THE UNITED STATES DISTRICT COURT**

9  **FOR THE DISTRICT OF ARIZONA**

12 Manuel Gray                )  **CASE NO. 2:20-cv-1987-PHX-JJT**
                              )
13           Plaintiff,       )
                              )  **DEFENDANT SAKS FIFTH AVENUE**
14     vs.                    )  **LLC'S MOTION FOR SUMMARY**
                              )  **JUDGMENT**
15 Saks Fifth Avenue, LLC     )
                              )
16           Defendant.       )
                              )
17 _____)

18     Defendant Saks Fifth Avenue, LLC's moves for summary judgment on Plaintiff's

19 sole remaining claim. This Motion is supported by the following Memorandum of Points

20 and Authorities, Saks' Separate Statement of Facts and supporting evidence, and the entire

21 record in this case.

22              **MEMORANDUM OF POINTS AND AUTHORITIES**

23 **I.   INTRODUCTION**

24     Plaintiff claims that Saks intentionally discriminated against him after he was

25 asked to leave the Saks Fifth Avenue Phoenix store ("Saks Phoenix") in July 2020. To the

26 contrary, this is simply a case of mistaken identity.

27     The bulk of Plaintiff's claims have already been dismissed for failure to state a

28 claim. The remaining claim, which seeks relief for alleged intentional racial

discrimination under 42 U.S.C. § 1981, is based upon Plaintiff's assertion that he was aggressively approached by Saks asset protection, deprived of the opportunity to complete a purchase, and forced to immediately leave Saks Phoenix, all based solely upon his race. Here, the undisputed facts—indeed, video footage of Plaintiff's entire interaction with Saks asset protection team and associates—reveal that, while Plaintiff was mistakenly asked to leave Saks Phoenix, upon the realization that he had been misidentified and confused with another customer who had harassed a Saks sales associate, Plaintiff remained in the store, accompanied his girlfriend while she completed her intended purchase with Saks, and left under his own power. For this reason, the Court should enter judgment in favor of Saks Fifth Avenue, LLC and dismiss what remains of this case with prejudice.

## II. UNDISPUTED MATERIAL FACTS

On July 11, 2020, Plaintiff and his girlfriend, Kristen Carreno, visited Saks' Phoenix location. [Defendant's Separate Statement of Facts ("SSOF") at ¶ 1]. Plaintiff, who identifies as African-American, browsed the men's department while Ms. Carreno shopped in the fragrance department. [SSOF ¶¶ 2-3]. After browsing, Plaintiff was seated at an empty makeup counter while Ms. Carreno continued to interact with a sales associate. [SSOF ¶ 4].

While seated, Plaintiff was approached by a Saks asset protection team member and asked to leave the premises. [SSOF ¶ 5]. The asset protection team member told Plaintiff that he was being asked to leave because a Saks sales associate had accused him of harassing her. [SSOF ¶ 6-7]. Plaintiff told the security guard that he had identified the wrong customer and asked to speak with a manager. [SSOF ¶ 8]. Saks Client Development Manager Scott Jussila joined Plaintiff while the asset protection team member disengaged to follow up with the sales associate who had identified Plaintiff as the individual who harassed her. [SSOF ¶ 9-10]. The sales associate informed asset protection that while she initially thought Plaintiff was the individual who had harassed her, she acknowledged that she had been mistaken. [SSOF ¶ 11]. Mr. Jussila explained

1  the mistake to Plaintiff. [SSOF ¶ 12]. Mr. Jussila then left the area and Plaintiff joined
2  Ms. Carreno at the beauty counter. [SSOF ¶ 13]. Mr. Jussila returned with a gift and
3  offered his apologies to Plaintiff and Ms. Carreno. [SSOF ¶ 14]. Ms. Carreno completed
4  her fragrance purchase and she and Plaintiff left the store. [SSOF ¶ 15-16]. Plaintiff left
5  the store under his own power, and was not escorted out by any representative of Saks
6  Phoenix. [SSOF ¶ 17] Plaintiff was not prohibited from making a purchase at Saks
7  Phoenix on July 11, 2020. [SSOF ¶ 18] Plaintiff never indicated that he planned or desired
8  to make a purchase at Saks Phoenix on July 11, 2020. [SSOF ¶ 19]

### III. ARGUMENT

To establish a claim against Saks under section 1981, Plaintiff must show that (1) he is a member of a racial minority, (2) Saks intended to discriminate against him on the basis of his race, (3) he was engaged in an activity protected under the statute, and (4) Saks interfered with that activity. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006); *see also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009).

Courts apply the *McDonnell Douglas* burden-shifting analysis to section 1981 claims. *Lindsey*, 447 F.3d at 1144 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)). Under *McDonnell Douglas*, if Plaintiff establishes a prima facie case of racial discrimination, then Saks has the burden to establish that it had a legitimate, non-discriminatory reason for its actions. *Id*. If Saks meets that burden, then the burden shifts back to Plaintiff to demonstrate that the non-discriminatory reason identified by Saks was mere pretext for intentional discrimination. *Id*. (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

**A. <u>Plaintiff cannot establish a prima facie case under 42 U.S.C. § 1981.</u>**

Saks does not dispute that Plaintiff is a member of a protected class. [SSOF ¶ 2]. However, the undisputed facts reveal that Plaintiff cannot prove any of the remaining elements of his section 1981 claim.

/ / / /

1. <u>Plaintiff was not deprived of an opportunity to complete a purchase at any point during his visit to Saks Phoenix.</u>

As an initial matter, Plaintiff's § 1981 claim fails because the allegations of his complaints make clear he was not in Saks Phoenix on the day of the incident for the purpose of making a purchase (*i.e,* a contract), a necessary component of his discrimination claim. 42 U.S.C. § 1981(b).[1] Only later in this litigation, apparently realizing that his admission was fatal to his § 1981 claim, did Plaintiff assert in response to Saks' Motion to Dismiss that he was, in fact, shopping himself. Specifically, Plaintiff now claims that he was making a final decision about whether to make a cologne purchase when Saks security intervened. Doc. 31, p. 2.

The undisputed facts clearly show otherwise. Video footage of Plaintiff shows that while in the Saks Phoenix store he (1) browsed the menswear section and (2) sat near his girlfriend, Ms. Carreno, while she was engaged with a sales associate at the cosmetics/perfume counter. [SSOF ¶¶ 3-4]. Plaintiff did not appear to select any merchandise for purchase himself, and was not engaged with the sales associate while Ms. Carreno selected product for purchase. *Id*. More importantly, video footage also shows that, even after interaction with Saks asset protection, Plaintiff remained in the Saks store while his shopping companion *completed her transaction.* [SSOF ¶¶ 15-16]. To the extent that Plaintiff's alleged denial of the right to contract arises from his involvement in a shopping companion's purchase, the claim fails. *See York v. JP Morgan Chase Bank, N.A.*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535 (D. Ariz. Aug. 12, 2019) (there can be no "actual loss of a contract interest if a customer is ultimately served, even if there is a

---

[1] See also *Garrett v. Tandy Corp*., 295 F.3d 94, 100 (1st Cir. 2002):
> [S]hopping in a retail store may involve multiple contracts. Each time a customer takes an item off the shelf, a new contract looms, and each time the item is returned, the potential contract is extinguished. The 1991 expansion of the definition of "make and enforce contracts" in section 1981, then, extends the reach of the statute to situations beyond the four corners of a particular contract; the extension applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship.

-4-

delay based on racial discrimination.") (citing *Lopez v. Target Corp.*, 676 F.3d 1230, 1231-32 (11th Cir. 2012)).

Even if the Court were to accept Plaintiff's unsubstantiated assertion that he, himself, was "denied the opportunity to continue shopping or complete prior transaction" because he was still deciding whether to make a cologne purchase, Plaintiff's late-arising attempt to create a disputed fact does not prevent summary judgment in favor of Saks. For example, the Tenth Circuit has held that a woman could not establish a section 1981 claim after she was asked to leave a store due to her race because she had not made or attempted to make a specific purchase and thus had not attempted to contract for the store's services. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1117–18 (10th Cir. 2001).

The *Hampton* court held that there "must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." *Id*. at 1118. The court held that there must be "the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Id*. at 1104. *See also Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001) (holding that the plaintiff must offer "evidence of some tangible attempt to contract" during the time she was banned from a store that "could give rise to a contractual duty between her and the merchant ... which was in some way thwarted."); *Brown v. Mydatt Servs. Inc*., No. 07-CV-190-BR, 2008 WL 1925041, at *5-6 (D. Or. Apr. 28, 2008) (finding that plaintiff had failed to make a prima facie case under section 1981 when he was asked to leave a shopping mall even though he had "established his intent both to purchase something to eat at the food court and to consider the sale items at the Van's store" because he had not established "any 'tangible attempt to contract' with any retail establishment at the mall such as physically selecting merchandise to buy.")

Plaintiff is unable to offer any evidence that he was denied an opportunity to complete a contract with Saks on the day of the incident. Plaintiff cannot even establish that he had "attempted to make a specific purchase," as the undisputed facts and Plaintiff's own allegations show that he was, at best, browsing. Plaintiff also cannot even establish

1  that he was banned from Saks on the day of the incident, because the request that he leave
2  the store was retracted once Saks personnel realized the mistake. Further, the only
3  transaction to which Plaintiff was remotely related—that of his female shopping
4  companion—was completed. Plaintiff then left the store of his own volition. As such,
5  Plaintiff's section 1981 claim fails and Saks is entitled to summary judgment in its favor.

6          2.     <u>Plaintiff cannot show that he was denied services at Saks Phoenix based upon any characteristic protected by § 1981.</u>

7

8  Even if the Court were to find that Plaintiff had sufficiently demonstrated his intent
9  to form a contract with Saks and Saks' interference therewith, Plaintiff's claim further
10 fails because he cannot show that any alleged adverse interaction with Saks associates
11 was based upon his race. Said differently, Plaintiff cannot meet his burden to prove that
12 "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast*
13 *Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (emphasis
14 added). Summary judgment is appropriate when the undisputed facts show that the denial
15 of services was the result of non-race based business decision, such as mistreatment of
16 employees by the plaintiff. *See Fuentes v. Planet Fitness*, No. CV-21-00818-PHX-DLR,
17 2022 WL 3577275, at *2 (D. Ariz. Aug. 19, 2022) (granting summary judgment in favor
18 of defendant gym when gym proffered evidence that plaintiff was denied admittance to
19 the facilities after gym employees contemporaneously reported that plaintiff had been
20 harassing them, and not because of his Hispanic heritage); *Clark v. Safeway,* 478 F. Supp.
21 3d 1080, 1091 (D. Or. 2020) ("Even assuming that Defendant's policies required
22 Defendant to take the action Plaintiff alleges, Plaintiff has produced no evidence that [her]
23 race was the reason that Defendant's employees failed to comply with Defendant's
24 policies.")
25 As in *Fuentes*, Saks' interactions with Plaintiff and its request that Plaintiff leave
26 the store were based upon a sales associate identifying him as the customer who
27 previously harassed her. [SSOF ¶¶ 7, 11]. Though ultimately mistaken, the adverse
28 interaction was based upon the sales associate's belief that Plaintiff had harassed her, not

upon his perceived race. In other words, the undisputed facts show that Plaintiff's race was not the but-for cause of the actions taken by Saks asset protection, and the 1981 claim must fail.

### 3. Plaintiff cannot show that Saks engaged in any intentional discrimination.

Plaintiff's prima facie case also fails because there is no evidence that Saks intentionally discriminated against Plaintiff. A plaintiff in a discrimination case can satisfy his burden to plead discriminatory intent by alleging "overt acts coupled with some direct evidence that the defendants' conduct was motivated by racial animus." *Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989). In the absence of direct evidence, a plaintiff could show discriminatory intent by presenting sufficient circumstantial evidence to support an inference of intentional discrimination. *See Lindsey,* 447 F.3d at1145 (citing *McDonnell Douglas,* 411 U.S. 792). Here, Plaintiff has neither direct nor circumstantial evidence of any discriminatory intent or racial animus by Saks. As set forth above, the undisputed facts establish that the interaction at issue was prompted by a specific but mistaken identification of Plaintiff. [SSOF ¶ 7]. Plaintiff's mere assumption that the interaction was race-motivated, without any evidence to corroborate it, cannot carry his burden to establish this element of his prima facie case. *Cf. Evans*, 869 F.2d at 1345 (finding that allegations of racial slurs and race-based comments direct at Plaintiffs were sufficient to survive a Rule 12(b)(6) motion on a § 1981 claim).

**B. Even if Plaintiff could establish his prima facie case, the undisputed material facts prove that Saks had a legitimate, non-discriminatory basis for the interaction with Plaintiff.**

Assuming that the Court finds that Plaintiff met his initial burden, summary judgment must still be granted in Saks' favor because Saks has ample and undisputed evidence of its legitimate, non-discriminatory reason for requesting that Plaintiff leave Saks Phoenix. *See Lindsey*, 447 F.3d at 1144. Importantly, Saks' burden is one of production, not persuasion, thereby involving no credibility assessment. *Id*. at 1147 (citing

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

### 1. Plaintiff was asked to leave Saks Phoenix because he was mistaken for another shopper who had harassed a Saks' sales associate.

As discussed above, Saks asset protection engaged Plaintiff and requested that he leave Saks Phoenix because a sales associate had identified Plaintiff as the customer who had harassed her earlier that day. [SSOF ¶¶5-7, 11]. Furthermore, the basis for the interaction and the revelation of the sales associate's mistake were explained to Plaintiff during the same interaction. [SSOF ¶ 12]. Saks' declarations are sufficient to establish these facts and satisfy Saks' limited burden of production as to its legitimate nondiscriminatory reason, and no further inquiry is necessary. *Lindsey*, 447 F.3d at 1147; *see also Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 879 (6th Cir. 2001) (noting the defendant's burden was one of production only and concluding "we must accept [the defendant's] stated reason").

### 2. Plaintiff will be unable to establish that Saks' legitimate justification was pretextual because Saks' associates immediately explained the mistake while Plaintiff remained in store.

A plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated [the defendant] or indirectly by showing that [the defendant's] proffered explanation is unworthy of credence." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) (citation omitted). "Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). "[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate" even where the plaintiff has met the minimal burden of making a prima facie showing. *Lindsey*, 447 F.3d at 1148 (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890-91 (9th Cir. 1994)).

Even assuming Plaintiff had met his burden of presenting a prima facie case,

1  Plaintiff cannot offer any evidence sufficient to establish any triable issue as to whether
2  Saks' proffered legitimate nondiscriminatory reason was a pretext for intentional
3  discrimination. Self-serving declarations alone cannot meet this burden. *See Villiarimo*
4  *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) ("[T]his court has refused
5  to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-
6  serving' testimony."); *see also F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171
7  (9th Cir. 1997) ("[a] conclusory, self-serving affidavit, lacking detailed facts and any
8  supporting evidence, is insufficient to create a genuine issue of material fact").

## IV. CONCLUSION

Plaintiff's sole remaining claim is based upon his bald assertion that Saks deprived him of the opportunity to complete a purchase and forced him to leave Saks Phoenix, all because of his race. Yet Saks has offered uncontested video and documentary evidence that, even after the allegedly discriminatory interaction, Plaintiff remained in the store while his girlfriend successfully completed her transaction. For these reasons, and all the many additional reasons set forth above, Saks respectfully requests that the Court enter judgment in its favor as to Plaintiff's section 1981 claim.

RESPECTFULLY SUBMITTED this 24th day of April, 2023.

GORDON REES SCULLY
MANSUKHANI, LLP


By: */s/ Brian R. Booker*
Brian R. Booker
Mary M. Curtin

*Attorneys for Defendant Saks Fifth Avenue, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24th, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF System, which will send notice of such filing to all attorneys of record in this matter.

/s/ Diane Archie