1   **WO**

2

3

4

5

6                   **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   Manuel Gray,                                  No. CV-20-01987-PHX-JJT

10                  Plaintiff,                     **ORDER**

11  v.

12  Saks Fifth Avenue,

13                  Defendant.

14

15          At issue is Defendant Saks Fifth Avenue's Motion for Summary Judgment (Doc.

16  69, "MSJ"), to which Plaintiff Manuel Gray filed a Response (Doc. 78, "Resp.") and

17  Defendant filed a Reply (Doc. 85, "Reply"). Also at issue is Plaintiff's Motion to Strike,

18  which he raised in his Response. (Resp. at 4–6.) The Court finds this matter appropriate for

19  decision without oral argument. *See* LRCiv 7.2(f). For the following reasons, the Court will

20  grant Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure

21  56(c) and deny Plaintiff's Motion to Strike.

22  **I.    BACKGROUND**

23          In July 2020, Plaintiff, who is African-American, visited a Saks Fifth Avenue store

24  with his girlfriend. Plaintiff states that he and his girlfriend sampled candles in the

25  fragrance department until he "had an idea" of which candle he wanted to purchase. (Doc.

26  77, Pl.'s Separate Statement of Facts ("PSSOF"), Ex. A ¶ 4.) While his girlfriend continued

27  exploring the fragrance department, Plaintiff left to browse the men's department. When

28  Plaintiff returned, his girlfriend was speaking with a sales associate. Although Plaintiff was

1   "prepared" to buy a candle, he decided to wait while his girlfriend finished her purchase.

2   (PSSOF, Ex. A ¶ 6.)

3       As Plaintiff sat nearby, a store security guard approached him and asked him to

4   leave the store, explaining that a sales associate had accused Plaintiff of harassment. (Doc.

5   70, Def.'s Separate Statement of Facts ("DSSOF") ¶¶ 5–7.) Plaintiff denied the allegation

6   and asked to speak with a manager. (DSSOF ¶ 8.) The manager arrived, conversed with

7   the security guard, and eventually determined that there had been a mistake. (DSSOF

8   ¶¶ 9–12.) The manager stepped away momentarily, and Plaintiff joined his girlfriend at the

9   checkout counter. (DSSOF ¶ 13.)

10      When the manager returned, he offered Plaintiff a gift. But according to Plaintiff,

11  the manager did not apologize or adequately explain the mishap. (PSSOF, Ex. A ¶ 9.)

12  Plaintiff's girlfriend then completed her transaction without issue, and the couple left the

13  store. (DSSOF ¶¶ 15–16.) Plaintiff did not purchase anything, but he claims he "felt

14  compelled to leave the store," and the manager and security guard "demanded that [he]

15  leave . . . so that he could not purchase a candle . . . as he intended." (PSSOF ¶¶ 17–19.)

16  Plaintiff adds that, at one point, the manager pushed him "as if to herd [him] . . . out of the

17  store." (PSSOF, Ex. A ¶ 10.)

18      Plaintiff initially asserted six different claims, five of which the Court dismissed.

19  (Doc. 33.) Plaintiff's only remaining claim, for which Defendant seeks summary judgment,

20  is that Defendant violated 42 U.S.C. § 1981 by denying Plaintiff the right to make a contract

21  on the basis of his race. (Doc. 9 ¶ 36.)

22  **II.    LEGAL STANDARD**

23      Under Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is granted

24  summary judgment when: (1) the movant shows that there is no genuine dispute as to any

25  material fact; and (2) after viewing the evidence most favorably to the non-moving party,

26  the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*

27  *Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285,

28  1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect

1  the outcome of the suit under governing [substantive] law will properly preclude the entry

2  of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

3  "genuine issue" of material fact arises only when the "evidence is such that a reasonable

4  jury could return a verdict for the nonmoving party." *Id.*

5  In considering a motion for summary judgment, the court must regard as true the

6  non-moving party's evidence, if it is supported by affidavits or other evidentiary material.

7  *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party

8  may not merely rest on its pleadings; it must produce some significant probative evidence

9  tending to contradict the moving party's allegations, thereby creating a material question

10  of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative

11  evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l*

12  *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

13  "A summary judgment motion cannot be defeated by relying solely on conclusory

14  allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

15  1989). "Summary judgment must be entered 'against a party who fails to make a showing

16  sufficient to establish the existence of an element essential to that party's case, and on

17  which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d

18  1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

19  **III.    ANALYSIS**

20  **A.    Defendant's Motion for Summary Judgment**

21  Section 1981 prohibits racial discrimination in the making and enforcement of

22  contracts. 42 U.S.C. § 1981. When reviewing § 1981 claims, courts apply the *McDonnell*

23  *Douglas* burden-shifting analysis. *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1144 (9th Cir.

24  2006). Under this analysis, if Plaintiff establishes a *prima facie* case of discrimination, the

25  burden shifts to Defendant to offer a legitimate, non-discriminatory reason for its actions.

26  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). If Defendant

27  does so, the burden shifts back to Plaintiff to demonstrate that Defendant's reason was

28  mere pretext for intentional discrimination. *Id.* (citing *Tex. Dep't of Cmty. Affairs v.*

1  *Burdine*, 450 U.S. 248, 253 (1981)).

2        In the context of a non-employment contract, Plaintiff establishes a *prima facie* case

3  of discrimination if he shows that "(1) [he] is a member of a protected class, (2) [he]

4  attempted to contract for certain services, and (3) [he] was denied the right to contract for

5  those services." *Id.* at 1145 (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872

6  (6th Cir. 2001); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996)).

7  The parties agree that Plaintiff is a member of a protected class, but Defendant challenges

8  the remaining two elements.

9  **1.      Attempt to Contract**

10        To survive summary judgment, Plaintiff must demonstrate a genuine factual issue

11  as to whether he attempted to contract with Defendant. *See Lindsey*, 447 F.3d at 1145.

12  Because "[t]he Ninth Circuit has not yet established the parameters of the minimum

13  showing necessary to demonstrate an attempt to make a contract in a non-employment

14  context," courts within the Ninth Circuit have turned to other circuits for guidance. *See*

15  *Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1088 (D. Or. 2020).

16        The First Circuit, for example, has explained that "a retail customer must allege that

17  he was actually denied the ability either to make, perform, enforce, modify, or terminate a

18  contract, or to enjoy the fruits of a contractual relationship, by reason of race-based

19  animus." *Garrett v. Tandy Corp.*, 295 F.3d 94, 100–01 (1st Cir. 2002). The Tenth Circuit

20  requires plaintiffs to demonstrate "interference with a contract beyond the mere expectation

21  of being treated without discrimination while shopping." *Hampton v. Dillard Dep't Stores,*

22  *Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001). The Fifth Circuit has held that plaintiffs must

23  offer "evidence of some tangible attempt to contract." *Morris v. Dillard Dep't Stores, Inc.*,

24  277 F.3d 743, 752 (5th Cir. 2001). And the Seventh Circuit has clarified that interference

25  with "prospective contractual relations" is too speculative to state a claim under § 1981,

26  and plaintiffs must instead "allege the actual loss of a contract interest, not merely the

27  possible loss of future contract opportunities." *Morris v. Office Max, Inc.*, 89 F.3d 411,

28  414–15 (7th Cir. 1996).

1    Defendant contends that the record is devoid of evidence that Plaintiff attempted to

2    contract with the store, emphasizing that Plaintiff never gathered any items for purchase

3    and "was, at best, browsing." (MSJ at 4–6.) Plaintiff responds by pointing out that he

4    sampled some candles and knew exactly what he wanted to purchase, which he argues is

5    "ample evidence that he was shopping at Saks[,] not merely browsing." (Resp. at 13.)

6    Plaintiff's argument is inapposite. Even if Plaintiff has shown he was "shopping,"

7    he fails to demonstrate "interference with a contract beyond the mere expectation of being

8    treated without discrimination while shopping." *See Hampton*, 247 F.3d at 1118. And

9    although Plaintiff may have established that he wished to purchase a certain candle, he

10   offers no evidence of a "tangible attempt to contract" with Defendant for that candle. *See*

11   *Morris*, 277 F.3d at 752. For example, Plaintiff does not allege that he tried to purchase

12   any items at the checkout counter, nor that he physically selected any items while shopping.

13   In fact, Plaintiff does not even allege that he informed anyone at the store that he planned

14   on purchasing an item. In contrast, Plaintiff's girlfriend selected the items she wanted to

15   purchase and completed her purchase at the checkout counter. But Plaintiff offered no

16   evidence that he independently took any steps to purchase anything at the store. Thus,

17   Plaintiff's evidence that he knew what he wanted to purchase is evidence only of a

18   "prospective contractual relation[]," which is insufficient to state a claim under the statute.

19   *See Morris*, 89 F.3d at 414–15. Plaintiff has not presented evidence from which a

20   reasonable jury could find he "attempted to contract" with Defendant. *See Lindsey*, 447

21   F.3d at 1145. Accordingly, Plaintiff cannot establish a *prima facie* case of discrimination

22   under § 1981. On this ground, the Court will grant Defendant's Motion for Summary

23   Judgment.

24   **2.    Denial of the Right to Contract**

25   Defendant also argues that it is entitled to summary judgment because there is no

26   genuine dispute as to whether Defendant denied Plaintiff's right to contract. The Court

27   disagrees.

28   Assuming that Plaintiff could show he attempted to contract with Defendant, he

1    must then show that Defendant thwarted that attempt. *See Lindsey*, 447 F.3d at 1145. Here,

2    it is undisputed that at one point, the security guard asked Plaintiff to leave the store.

3    (DSSOF ¶ 7). Nevertheless, Defendant argues that Plaintiff cannot demonstrate he was

4    denied the right to contract because "the request that he leave the store was retracted once

5    Saks personnel realized the mistake." (MSJ at 6.) But it offers no evidence that the manager

6    or security guard explicitly retracted the demand. *Cf. Touray v. Burlington Coat Factory*

7    *Warehouse Corp.*, No. 3:21-cv-5407-BJR, 2021 WL 6051146, at *1 (W.D. Wash. Dec. 21,

8    2021) (describing that when store employee realized she had misidentified plaintiff, she

9    "informed him that 'he was free to continue shopping.'"). Moreover, although it is

10   undisputed that the manager offered Plaintiff a gift, Plaintiff denies that the manager

11   apologized. And Plaintiff also claims that the manager pushed him as if to hurry him out

12   of the store. Therefore, had the Court concluded there was a genuine dispute as to whether

13   Plaintiff attempted to contract with Defendant, it also would conclude that Plaintiff

14   presented sufficient evidence such that a reasonable jury could find Defendant interfered

15   with Plaintiff's right to contract.

16   **B.      Plaintiff's Motion to Strike**

17          In support of its Motion for Summary Judgment, Defendant offered two exhibits of

18   surveillance video evidence depicting the incident described above. (DSSOF, Exs. 1, 2.) In

19   his response, Plaintiff moved to have that evidence stricken, alleging that Defendant never

20   disclosed either video. (Resp. at 4.) However, Plaintiff also supported his response with

21   two surveillance videos of the same incident. (PSSOF, Exs. C, D.) And Defendant claims

22   that "the Court itself can verify[ Defendant's] Exhibits 1 and 2 are no different from

23   Plaintiff's Exhibits C and D," which demonstrates that Defendant disclosed the videos to

24   Plaintiff. (Reply at 2.)

25          The Court has reviewed the exhibits and finds that they are not identical. Although

26   similar, each of Defendant's exhibits depicts several more minutes of the incident than

27   Plaintiff's exhibits. Regardless, none of these exhibits played a material role in the Court's

28   conclusion that Defendant is entitled to summary judgment. The Court, therefore, will deny

1   Plaintiff's Motion to Strike as moot.

2       **IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary

3   Judgment (Doc. 69).

4       **IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion to Strike (Resp.

5   at 4).

6       **IT IS FURTHER ORDERED** directing the Clerk to enter judgment in favor of

7   Defendant and to close this case.

8       Dated this 6th day of October, 2023.

9

10      Honorable John J. Tuchi
        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28