```
                                              ☑ FILED      ___ LODGED
                                              ___ RECEIVED ___ COPY
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF Arizona

NOV 0 3 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

### Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

U.S. District Court case number: **No. CV-20-01987-PHX-JJT**

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: **December 17, 2020**

Date of judgment or order you are appealing: **10/06/2023**

Docket entry number of judgment or order you are appealing: **87**

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes   ○ No   ○ IFP was granted by U.S. District Court

---

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

Manuel Gray Pro Se

Is this a cross-appeal?   ○ Yes   ◉ No

If yes, what is the first appeal case number? 

Was there a previous appeal in this case?   ○ Yes   ◉ No

If yes, what is the prior appeal case number? 

Your mailing address (if pro se):

MANUEL GRAY

3419 N. 28th Street

City: Phoenix   State: Az   Zip Code: 85016

Prisoner Inmate or A Number (if applicable): 

Signature: MANUEL GRAY   Date: 11/02/23

*Complete and file with the attached representation statement in the U.S. District Court*
*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 1                                                                    Rev. 06/09/2022

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:
Manuel Gray

Name(s) of counsel (if any):
Pro Se

Address: 3419 N. 28th Street Phoenix, Az. 85016

Telephone number(s): 480-495-1446

Email(s): Mgray10619@aol.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ● Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:
SAKS FIFTH AVENUE

Name(s) of counsel (if any):
Brian R. Booker
Mary M. Ciurtain

Address: Two North Central Avenue Suite 2200

Telephone number(s): 602-794-2471

Email(s): bbooker@grsm.com

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| Manuel Gray | ) | CASE NO. CV-20-01987-PHX-JJT |
| Plaintiff-Appellant | ) | |
| | ) | NOTICE OF APPEAL |
| VS. | ) | |
| Saks Fifth Avenue LLC | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| _____ | ) | |

Appeal from the United States District Court

for the District of Arizona

John J. Tuchi, District Judge, Presiding

Argued and Submitted November 2, 2023,

Phoenix, Arizona

Notice is hereby given that the United States of America, plaintiff in the above-captioned case, hereby appeals to the United States 9th Circuit Court of Appeals for from the district courts summary judgment order entered on 10/6/23

**I.     BACKGROUND**

The following material facts are taken from the district courts orders below. The facts are undisputed or where disputed are taken as the court was required to take them in the light most favorable to plaintiff, the court failed Plaintiff and instead rule in favor of Defendant. The court granted defendant's motion for summary judgment and accepted Defendant's version of events despite Plaintiff

presenting overwhelming facts and evidence to the contrary. Saks and its officials concocted, fabricated, and intentionally lied about all of the events of that day. If the Plaintiff had been able to present the unedited surveillance video and other evidence that shows he was obviously being racially profiled. Only an expert forensic video analyst would be capable of authenticating this video and rendering a fair conclusion about what it contains. Defendant was never compelled to provide any discovery to plaintiff, never articulated a legitimate nondiscriminatory reason for treatment discriminatory reason for the treatment of Plaintiff, yet the court accepted Defendant excuse that Plaintiff a black man had assaulted a white female sales associate, who later claimed it was simply a case of mistaken identity, all of which was a fabricated lie.

    The incident occurred in the Biltmore Fashion Park Mall 2246 East Camelback Road Phoenix, Az. 85015 In July 2020, Plaintiff, who is African-American and his white girlfriend an interracial couple, were on a shopping outing at the Biltmore Fashion mall. Following previous stops, browsing, shopping and purchases at two other locations within the mall without being subjected to any discrimination or racial profiling, When Plaintiff and his girlfriend enter Saks, Plaintiff is clearly carrying what appears to be bags from another store (See surveillance video). Plaintiff and girlfriend enter Saks with plaintiff carrying 1 bag each from each of those stores.  What Mr. Gray and his girlfriend thought would be a pleasant break from being cooped up at home with Covid and watching the aftermath and trauma of the George Floyd murder turned into a nightmare. Plaintiff was of followed around, harassed, and intimidated for almost 30 minutes before being violently confronted unwanted touching, verbally assaulted and false allegations made against. Plaintiff was falsely accused of assaulting/harassing a Saks Fifth Avenue Employee. While that was the experience of Mr. Gray a black man, Saks gave Ms. Carreno his white girlfriend a wholly different experience. Ms. Carreno was able to move freely throughout the store uninhibited without accusations, unwanted touching or intimidation.

    Plaintiff initially approached the beauty consultant with his girlfriend before sitting down at a nearby counter. The beauty consultant approached Plaintiff 3 different time and continued to engage Plaintiff and solicited his opinion about certain fragrances to possibly purchase. After several minutes of beauty consultant providing samples, Plaintiff made his decision and stepped away as girlfriend continued to engage with beauty consultant. After Plaintiff made his decision, he browsed and continued shopping through the rest of the store and men's with the bags (See surveillance video) from

his previous purchases visible in his hands where you can clearly see from CCTV surveillance camera operator. Plaintiff became an unfortunate victim of blatant discrimination and racial profiling. The CCTV surveillance camera operator obviously clearly only focused in on and closely monitoring African-Americans (See surveillance video). This is clear from the surveillance video and was clearly missed or disregarded by the court.

In order to rid the store of Mr. Gray, an undesirable black shopper, Saks Asset Protection CCTV surveillance camera operator, Saks security guard, and Manager Scott Jussula intentionally lied, fabricated, conspired, and concocted a story that plaintiff assaulted/harassed a sales associate. Saks practice of racial profiling/discrimination and concocting wrongdoing by black Americans to remove them from its stores has resulted in Saks being sued numerous times in the past for this behavior.

Plaintiff browsed and shopped through the selection of clothes and various other items, finding nothing that interested him, Plaintiff proceeded to return to the area where his girlfriend was and to make his purchase that he had previously discussed with beauty consultant.

On his way back to the area Plaintiff encountered two individuals standing near a cash register who starred at him, making Plaintiff feel very uncomfortable and unwanted.

As Plaintiff walked through the area it was obvious that he was being discriminated against and racially profiled. Security was advised by supervisor in conjunction with CCTV operator to closely monitor Plaintiff in person as he had been monitoring Plaintiff several minutes via video surveillance.

Plaintiff patiently sat in a chair nearby waiting where he initially sat when he and his girlfriend first entered the store where beauty consultant had approached Plaintiff numerous times to get his input and final decision on a product (See unedited video). As Plaintiff was waiting for his girlfriend to complete her transaction so he could complete his, a store security guard approached Plaintiff in an aggressive, threatening, intimidating manner physically bumping into Plaintiff, getting face to face and demanded at least 3 times that Plaintiff immediately leave the premises. Plaintiff vehemently denied the allegation, protested his innocence and refused to be intimidated or bullied and demanded to speak with a supervisor. When Plaintiff confronted and challenged Saks security and manager regarding them racial profiling and discriminating against him they fabricated an intentional lie that plaintiff had assaulted a Saks employee. The manager Scott Jussula was nearby, initiated, coordinated and directed the surveillance of Plaintiff. The manager did not have a long conversation with security guard

and spoke mostly with Plaintiff, never mentioning anything about a mistake, never apologizing, and never asking security to step back or stand down as he continued to harass and intimidate Plaintiff.

After being boxed in by Security and Manger for several minutes of threatening intimidating, menacing behavior and not getting a reasonable explanation for their egregious behavior, plaintiff attempted to walk to counter in an attempt to complete his transaction, but was continuing to be closely followed and harassed by the manager who pushed Plaintiff in the back as he walked towards counte and security guard stood near Plaintiff forcing Plaintiff to exit the store without completing his previous transaction. Plaintiff who was who was already in fear for his for his life reluctantly waited for his girlfriend, not knowing if police had been called. Plaintiff could have been severely injured or which has happened in the past based on a lie. Plaintiff decided not to make an attempt to complete his transaction and decided leave after his girlfriend completed her transaction. Plaintiff was not allowed to safely and freely complete any kind of a transaction. Plaintiff, who was continuing to b racially profiled was under constant video surveillance, pressure and harassment from Saks individuals the entire time he was in the store.

Plaintiff initially asserted six different legitimate claims, five of which the Court dismissed. (Doc. 33.) Plaintiff's only remaining claim, for which Defendant was awarded summary judgment, is that Defendant violated 42 U.S.C. 1981 by denying Plaintiff the right to make a contract on the basis of his race.

Despite Plaintiff presenting factual documentation and overwhelming evidence including unedited surveillance to corroborate his claims that he was another black victim of racial profiling the court used the strictest interpretation possible of the law to deny and dismiss Plaintiff's original claims.

The historical and disturbing significance of this incident cannot and should not have been Ignored (See Emmett Till). The sad history of white women falsely accusing black men of a variety of things including assault/harassment have resulted in them being severely injured and in some cases killed based on those false allegations and intentional lies

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a moving party is granted summary judgement when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2)

after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed.R. Civ.P. 56; Celotex Corp. v. Catrett, 447 U.S. 317, 322-23. (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89(9th Cir. 1987. Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing[substantive] law will properly preclude the entry of summary judgement." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986). A "genuine issue" of the material fact arises only when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Id

In considering a motion for summary judgement, the court must regard as true the non-moving party's evidence, if it is supported by affidavits and other evidentiary, material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. However, the nonmoving party may not merely rest on it's pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. Anderson, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 289 (1968). Plaintiff presented the court with overwhelming evidence in addition to its own surveillance videos (the unedited ones) and a detailed 16-page report by a retail expert. All of which the court failed to consider in granting defendant motion for summary judgment.

In Federal Rules of Civil. Procedure Rule 56 summary judgment proceeding, the Court must view the relevant facts presented in the light most favorable to plaintiff, which means the Court must believe Plaintiff's evidence, including his testimony and must draw all justifiable inferences in his favor. Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2502, (1986) Bodett v. CocCom, Inc. 366 F.3d 736, 742 (9th Cir. 2004).

The disputed and undisputed facts, based on point of view, established material differences that preclude summary judgment. Reeves v. Sanderson Plumbing Products, Inc. 530 U.S. 133, 149-151 (2000). Applying these standards means that the Defendant's Motion for Summary judgment should have been denied.

Saks Phoenix, denies it's wrongdoing. Saks claims even though Plaintiff had been sampling candles, cologne, and browsing the men's department that Plaintiff had no intention of making a purchase and was just "browsing" in the men's department. In an effort to get away with this blatant

discrimination, Saks offered the Court an excuse that a white female sales associate made the "mistake" of taking Plaintiff for an African American man that harassed/assaulted her earlier in the day.

The facts are clear, and was the opposite. There was no documented report of a white female sales associate being assaulted/harassed that day and time, no incidents were investigated and no witness statements were gathered.

Plaintiff presented overwhelming evidence of violated policies, threatening and intimidating behavior, inter alia. Summary judgement was not appropriate. The totality of the circumstances and McDonnel-Douglas comparator evidence proves that Saks illegally discriminated against Plaintiff on account of his race and thwarted Plaintiffs attempt to contract. Accordingly, the Court should have denied Saks Fifth Avenue LLC's motion for summary judgment and permit Plaintiff to move forward and make his case to a jury.

In Federal Rules of Civil Procedure Rule 56 summary judgement proceedings, the Court must view the relevant facts presented in the light most favorable to Plaintiff, which means the court must believe Plaintiff's evidence, including his testimony and must draw all justifiable inferences in his favor. Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2502, 2513 (1986) Bodett v. CoxCom, Inc. 366 F.3d 736, 742 (9th Cir. 2004.)

The disputed and undisputed facts, based on point of view, establish material differences that should have precluded summary judgement. Reeves v. Sanderson Plumbing Products, Inc. 530 U.S. 133, 149-151 (2000). If the Court had fairly applied these standards fairly Defendant's motion for Summary Judgement should have been denied. Plaintiff made several requests for production from. Defendant response, following objections is "See documents produced herewith at SAKS000119-226. Those documents did not contain an incident report, no witness statements, and heavily redacted emails with mostly duplication. Defendant did not respond to Plaintiffs repeated requests and was allowed to stall and delay request for documentation for several months right up to summary judgment.

Defendant was allowed to submit surveillance to the Court and not include plaintiff prejudicing the case against him.

Plaintiff moved to strike Saks video exhibits 1 and 2, because Saks did not disclose these video recording during discovery. Plaintiffs first heard of these videos in support of Sak's Motion for summary Judgment. In Pinterest v. Pintrips, Inc. 2015 U.S. Dist. LEXIS 76545 (N.D.) Cal. 2015), a Court found

under similar circumstances that late disclosure of a document warranted its exclusion under Rule 37.

Fed Rule of Civil Procedure 37 (c)(1) provides "if a party without substantial justification fails to disclose information required by Rule 26(a) or 26(e)1) or to amend a prior response as required by Rule 26(e)(2) is not, unless such failure is harmless, permitted to use as evidence at trial or at a hearing or on a motion any information not so closed."

On December 14, 2022, Saks provided Plaintiff with its second Supplemental disclosure listing SAK000001-SAK000003 as the surveillance video that was different from summary judgment.

In determining whether to preclude the introduction of evidence pursuant to Rule 37, courts consider (1) the surprise to the party against such evidence would be offered (2) the ability to cure the surprise (3) the extent to which allowing the evidence would disrupt the trial (4) the importance of the evidence, and (5) the non-disclosing party's explanation for the failure to disclose.  San Francisco baykeeper v. W. Bay Sanitary Dist., 791 F. Supp2d 719, 733 (N.D. Cal. 2011). Applying these factors leads to the conclusion that the late disclosed videos, exhibits 1 and 2 should have been excluded.

Saks surprised Plaintiff by not disclosing the videos and submitted the videos to the Court in support of its Motion for Summary Judgment. Saks may not cure this surprise. Permitting video Exhibits 1 and 2 at this stage in the litigation. All of these factors, as listed in the case cited above, should have weighed in favor of court excluding video Exhibits 1 and 2.

In effect, Saks was allowed by the Court to hide the ball so that Plaintiff could not present Complete video and discovery evidence to Plaintiff's expert that in many instances contained information that was exculpatory. Consequently, The Court prejudiced Plaintiff's case. Accordingly, the court should have struck video Exhibits 1 and 2 pursuant to Rule 37.

"A summary judgement motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989. "Summary judgement must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which party will bear the burden of proof at trial." United States v. Carter, 906 F.2d 1375, 1376 (9th Cir. 1990).

Facts clearly show that Plaintiff was involved in a shopping outing with his girlfriend at the Biltmore Mall. Plaintiff and his girlfriend had made two prior stops prior to entering Saks, where they stopped at Jay Crew and Macy's making purchases at both locations. Plaintiff had clearly been shopping

before entering Saks as evidenced by surveillance video that shows Plaintiff carrying bags from those stores that were clearly visible to the CCTV surveillance camera operator who had Plaintiff under surveillance and specifically focused in on those bags as he racially profiled and closely monitored Plaintiff.

Plaintiff not only argues that he was physically contacted and pushed by Saks staff, there were eye witnesses to the incident. It would also be very clear in the unedited video that Saks failed to produce as well as other requested documents during discovery. A black customer is required to announce his presence and intentions when he enters Saks or they can be followed around by security staff harassed, physically contacted and forced to exit the store based on n a racist stereotype. Were white shoppers required to announce their shopping and purchasing intentions? That mentality and attitude sounds like something out of the Jim Crow era.

## III. ANALYSIS

### A. Defendant's Motion for summary judgement

Section 1981 prohibits racial discrimination in the making of contracts. 42 U.S.C. 1981 claims courts apply the McDonnell Douglas burden-shifting analysis. Lindsey v. SLT L.A. LLC, 447 F.3d 1138, 1144 (9th Cir. 2006). Under this analysis, if Plaintiff establishes a prima facie case of discrimination, the burden shifts to the Defendant to offer a legitimate non-discriminatory reason for its actions. Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792,802-03 (1973). If Defendant does so, then the burden shifts back to Plaintiff to demonstrate that Defendant's reason was mere pretext for intentional discrimination. Id. (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the context of a non-employment contract, Plaintiff establishes a prima facie case of discrimination if he shows that "(1) [he] is a member of a protected class, (2) [he] attempted to contract for certain services, and (3) [he] was denied the right to contract for those services." Id. At 1145 (citing Christian v. Wal-Mart stores Inc., 252 F.3d 862, 872 (6th Cir. 2001); Bratton v. Roadway Packages Sys., Inc., 77 F.3d 168, 176 (7th Cir.1996)). This should not have been a question or issue as judge had ruled on that matter earlier in the case. Plaintiff established a clear prima facie case of discrimination early on.

A plaintiff producing direct or circumstantial evidence to demonstrate a discriminatory reason "need provide 'very little such evidence to raise a genuine issue of fact, an indication of discriminatory

motive... may suffer to raise a question that can only be resolved by a factfinder." Id. Quoting Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1409 (9th Cir. 1996) A Plaintiff "may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason ore likely than not motivated" the defendant and that the defendant's action adversely affected Plaintiff in some way. " Martinez v. Optimus Prop.m LLC, 2018 U.S. Dist. LEXIS 228573, citing Pac. Shores Props.m LLC v. City of Newport Beach, 730 F.3d at 936, 1158 (9th Cir. 2014) quoting Geist v. GTE Serv Corp., 360 F.3d 1103, 1122 (9th Cir 2004).

Plaintiff presented direct and exculpatory evidence in addition to a 16-page independent expert report with direct evidence that defendant discriminated against Plaintiff. The CCTV surveillance clearly shows that the operator only focused in on and zoomed in on African Americans and had an extra interest in plaintiff obviously racially profiling him. The other unedited surveillance videos would show the manger and security continuously harassing and denying plaintiff his right to contract freely as his white girlfriend was allowed to do. There a clear discrepancy and editing of the surveillance videos that could help corroborate Plaintiff's claims, that can only be confirmed by an expert forensic video analyst.

Plaintiff presented the court with ample circumstantial evidence of race discrimination and a comparator. Saks treated an individual outside of Plaintiff's class, Ms. Carreno plaintiff's white girlfriend more favorably.

Saks permitted Ms. Carreno to make purchase without pushing, accusing, intimidation, or hurrying. (Ex B 10) Ms. Carreno is a proper comparator to Plaintiff. "The alleged comparator 'need not be identical' but must be similar in material respects. Materiality depends on context and is a question of fact that cannot be mechanically resolved." Earl v. Nielson Media Rsch. Inc., 758 F.3d 1108, 1114 (9th Cir. 2011)

Both Plaintiff and Ms. Carreno were similarly situated. Both shopped in the cosmetics department and two prior locations and purchases at Jay crew and Macy's before entering Saks. This comparison alone should have permitted plaintiff to meet his burden of producing evidence of intentional discrimination. Plaintiff offers more than just a comparison.

An invidious discriminatory purpose may often be inferred from the totality of the relevant facts... Thus, determining the existence of a discriminatory purpose demands a sensitive inquiry into

such circumstantial and direct evidence as may be available. Rogers v. lodge, 458 U.S. 613, 102 S.Ct. 3272, 73 L.Ed. 2d 1012 (1982) Lowe v. Monrovia, 775 F.2d 998 (9th Cir 1985) A sensitive inquiry into facts and circumstances of this case established that Saks discriminated against Plaintiff.

In the context of a non-employment contract, Plaintiff establishes a prima facie case of discrimination if he shows that "(1) [he] is a member of a protected class, (2) [he] attempted to contract for certain services, and (3) [he] was denied the right to contract for those services." Id at 1145 (citing Christian v. Wal-Mart Stores, Inc., 252 F.3d 862,872 (6th Cir. 2001); Bratton v. Roadway Packages Sys. Inc., 77 F.3d 168, 176 (7th Cir. 1996). The parties agree that Plaintiff is a member of a protected class, but Defendant challenges the remaining two elements, which the district court judge had already previously ruled on that issue in Plaintiff's favor. So, the sudden reversal by the judge is very concerning.

1.  **Attempt to Contract**

To survive summary judgement, Plaintiff must demonstrate a genuine factual issue as to whether he attempted to contract with Defendant. See Lindsey, 447 F.3d at 1145. Because "[t] the Ninth Circuit has not yet established the parameters of the minimum showing necessary to demonstrate an attempt to make a contract in a non-employment context," courts within the Ninth Circuit have turned to other circuits for guidance. See Clark v. Safeway, Inc., 478 F. Supp. 3d 1080, 1088 (D. Or. 2020)

The first Circuit, for example, has explained that "a retail customer must allege that he was actually, denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of race-based animus." Garrett v. Tandy Corp., 295 F.3d 94, 100-01 (1st Cir. 2002). The Tenth Circuit requires plaintiffs to demonstrate "interference with a contract beyond the mere expectation of being treated without discrimination while shopping." Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1118(10th Cir. 2001). The Fifth Circuit has held that plaintiffs must offer "evidence of some tangible attempt to contract." Morris v. Dillard Dept 't Stores, Inc., 277 F.3d 743, 752 (5th Cir. 2001) and the Seventh Circuit has clarified that interference with "prospective contractual relations" is too speculative to state a claim under 1981, and plaintiff must instead "allege the actual loss of a contract interest, not merely the possible loss of the future contract opportunities." Morris v. Office Max, Inc., 89 F.3d 411,414-15 (7th Cir. 1996). "Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts, and the

enjoyment of all benefits privileges, terms, and conditions of the contractual relationship.") see also Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (5th Cir. 1997) (listing three elements); Morris v. Office max, Inc., 89 F.3d 411, 413(7th Cir. 1996) (applying elements to retail transaction0). These elements are flexible and are not to be applied rigidly. "Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 530 n. 2 (10th Cir. 1994). But that is exactly what the judge did. "A plaintiff who lacks direct evidence of racial discrimination may rely on indirect evidence of discrimination." Perry v. Woodard, 199 F.3d 1126, 1135 (10th Cir. 199). In a case where the plaintiff attempts to show intentional discrimination by direct evidence, the court must employ "the burden-shifting framework first articulated in the seminal case of McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817. The judge failed to apply that standard in this case.

Defendant contends that the record is devoid of evidence that Plaintiff attempted to contract with the store, emphasizing that Plaintiff never gathered ay items for purchase and "was, at best, browsing." (MSJ) at 4-6.) Defendant mischaracterizes and misrepresents the facts as they have throughout this case. Plaintiff clearly demonstrates from the surveillance video and witness statements that he tried to contact with Saks. Plaintiff was being harassed the entire tine.

Plaintiff tried to walk to counter the counter, but manger pushed him in the back and the security closely followed where they continued to harass and intimidate Plaintiff. Under those circumstances who could be expected to complete any shopping under those conditions. Plaintiff responds by emphatically pointing out there is evidence on surveillance video of him entering Saks carrying shopping bags clearly demonstrates "interference with with a contract beyond the mere expectation of being treated without discrimination while shopping." See Hampton, 247 F.3d at 1118.

Plaintiff established his intentions that he was shopping as evidenced by him shopping at other stores prior to entering Saks. Plaintiff repeated the same process as he had at previous stores without incident and had an idea of what he was interested in purchasing before he was rudely interrupted and forced out of the store. Since when does a black man have to enter a store and announce his intentions to purchase something or he can be forced out of a store

Plaintiff was constantly being harassed and intimidated by Saks officials all the way up to the point where Plaintiff was forced out of the store. discrimination while shopping." See Hampton, 247 F.3d at 1118. And Plaintiff offers clear evidence he established he was shopping He offers more than

ample evidence of a "tangible attempt to contract"" See Morris, 277 F.3d at 752. For example, Plaintiff does allege he was attempting to shop before he was racially profiled.

Plaintiff can clearly show through defendant's own surveillance videos that he had intentions of making a purchase as he had done prior to entering Saks as he was carrying bags that contained those items. The CCTV operator was only focused on monitoring and watching black people despite their being various other white people shopping a blatant and obvious case of racial profiling. (SAK000001.

Plaintiff provided the court with ample and overwhelming evidence that he was shopping not just merely browsing. Plaintiff repeated the same behavior pattern that he had at previous stores without incident or discrimination. (See surveillance video) He browsed, shopped, and eventually made purchases. Plaintiff was carrying those purchases from the previous shopping stops in the Biltmore Fashion Mall that day. These facts established Plaintiff was clearly shopping not just at Saks but at other store's locations in the mall. It is well settled in contract law that a party to a contract may prevent the other party from completing his own contract. There are a number of ways one party may prevent another from competing his own contract. A party may physically restrain or intimidate or exclude a party from the place where the contract might be performed. Brands v. lakeside Fire Dist., 2010 U.S. Dist. LEXIS 50856. (Ariz. 2010). Saks employed all three of these tactics to stop Plaintiff from completing his own contract to complete his transaction.

Plaintiff presented the court with the following evidence to prove Saks prevented plaintiff from performing his contract: (1) Saks security physically bumped plaintiff (2) Mr. Jusilla pushed plaintiff in his back when he attempted to make as purchase (3) security threatened to call police. These tactics forced Plaintiff to exit store without completing his initial transaction. That's exactly what Saks employees wanted, an undesirable black shopper, to leave because of his race and their racial profiling/discrimination. These facts present triable issues whether Saks prevented Plaintiff from making a contract by discriminating against him and it should all be captured on the unedited surveillance video (See unedited surveillance video).

Plaintiff established a prima facia case of race discrimination, the burden should have been on is on Saks to offer a legitimate non-discriminatory reason for its conduct. Saks claims that a white female sales associate thought Plaintiff was the African-American that assaulted her and was mistaken about it.

Plaintiff offers the following reasons why it is pretext (1) CCTV camera operator singled out and racially profiled Plaintiff, (2) CCTV singled out closely focused in on and monitoring on black people, Mr. Hassard's expert report that there should have been an incident report, witnesses interviewed, and a police called but they were not. (Sa's modus operandi is to fabricate and intentionally lie to put African-American out if its stores which is exactly what happened to Plaintiff. For these reason Plaintiff presented triable issues to prove that Saks behavior is pretext. Plaintiff has presented more than enough evidence in fact, overwhelming evidence from which a reasonable jury could find "attempted to contract" with defendant. Accordingly, Plaintiff has more than established a prima facie case of discrimination that court had ruled on earlier in the case. Defendants case base on intentional lie and and false statements.

## 2.   Denial of the right to Contract

Defendant also argues that it is entitled to summary judgement because there is no genuine dispute as to whether Defendant denied Plaintiff's right to contract. The Court disagrees. Assuming that Plaintiff could show he attempted to contract with defendant, he must then show that Defendant thwarted that attempt. See Lindsey, 447 F.3d at 1145, Here, it is undisputed that at one point, the security guard asked Plaintiff to leave store. (DSSOF 7). Nevertheless, Defendant argues that Plaintiff cannot demonstrate he was denied the right to contract because "the request that he leave the store was retracted once Saks personnel realized the mistake." (MSJ at 6.) But it offers no evidence that the manager or security guard explicitly retracted the demand. Cf Touray v. Burlington Coat Factory Warehouse Corp., No. 3:21-cv-5407-BJR, 2021 WL 6051146, at *1 (W.D. Wash. Dec. 21, 2021) (describing that when store employee realized she misidentified plaintiff, she "informed him that 'he was free to continue shopping.'"). Moreover, although it is undisputed that the manager offered Plaintiff an inexpensive gift, Plaintiff denies that the manager apologized or informed him that he had been misidentified by a sales associate and was free to continue shopping.

As is sat in my chair, the security guard who had been racial profiling me in coordination with Saks security team came out of nowhere bumping me physically and demanded that I immediately leave the store and repeated it 3 times while standing inches from my face. He then stated that you assaulted a sales associate and you need to leave. Plaintiff told him he was making a mistake and

requested to speak with a manager. The manager who was nearby and part of the initial surveillance team approached and listened to Plaintiffs complaint. During the entire time Saks security was pacing back and forth all around Plaintiff with his hands behind his back trying to to threaten and intimidate Plaintiff. The manager never asked Saks security to step back or stand down, the manager and Saks security boxed Plaintiff in and continued to harass him until he attempted to walk to counter. As Plaintiff got up to walk to counter the manager John Jussila pushed plaintiff in the back. Plaintiff was surrounded with security on one side and the manager on the other side. Plaintiff was then followed to the counter.

The beauty consultant and Defendant spoke for a brief moment before he left for a short period of time, returned and tried offer Plaintiff an inexpensive gift.

Plaintiff refused the gift and requested to speak with someone else. The Manager reluctantly provided a business card for regional, manger, but did not apologize, did not inform Plaintiff that he had been misidentified, or and that he was free to continue shopping in the store. This is a blatant lie and should have been captured on video. Defendant claims manager and Security left and consulted with the alleged victim before returning to inform Plaintiff that a mistake. This never happened. was made

Saks security never left the area neither did the manager until the end. Therefore, had the the court concluded there was genuine dispute as to whether Plaintiff that Plaintiff presented sufficient evidence such that a reasonable jury could find defendant interfered with Plaintiffs right to contract and that's exactly what happened here. Even though the judge disagreed with defendants' assertions of Plaintiffs' denial of right to contract it still granted summary judgment Defendant.

**B.    Plaintiff's Motion to Strike**

In support of its Motion for summary judgement, Defendant offered two exhibits of surveillance video evidence depicting the incident described above. (DSSOF, Exs. 1,2.) In his response, Plaintiff moved to have the evidence stricken, alleging that Defendant never disclosed either video. (Resp. at 4.) However, Plaintiff also supported his response with two surveillance videos of the same incident. (PSSOF, Exs. C, D.) And Defendant claims "the court itself can verify [ Defendant's] Exhibits 1 and 2 are no different from Plaintiff's Exhibits C and D." which demonstrates that Defendant disclosed the videos to Plaintiff. (Reply at 2.) Defendant and the Court misrepresent and characterize the contents and significance of the surveillance videos. Plaintiff has always contended and requested from Defendant on

several occasions for unedited video surveillance of incident. The videos Plaintiff submitted are videos from defendant that are heavily edited and redacted much like the emails and the judge never ruled but waited 3 months without doing anything and dismissed the case based on an intentional lie and heavily edited documents and redacted like the emails. The Judge erred when he allowed this to be submitted as fact without the Plaintiff having a fair opportunity to dispute this information.

The court has reviewed the exhibits and finds that they are not identical. Although similar, each of Defendant's exhibits depicts several more minutes of the incident than Plaintiff's exhibits. Regardless, none of these exhibits played a material role in the Court's conclusion that Defendant is entitled to summary judgement. Plaintiff is in disagreement with the Court and its assessment of evidence. By allowing Defendant to introduce these videos in support of Saks' Motion for Summary judgment. In Pinterest v. Pintrips, Inc. 2015 U.S. Dist. LEXIS 76545 (N.D. Cao. 2015), a Court found under similar circumstances that late disclosure of a document warranted its exclusion under Rule 37.

Fed. Rule of Civil Procedure 37(c)(1) provides "if a party without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response as required by Rule 26(e)(2) is not, unless such failure is harmless, permitted to use as evidence at trial or at a hearing on a motion any information disclosed." The court, therefore wrongly denied Plaintiff's motion to strike. Here again the court is grossly wrong and Plaintiff vehemently rejects the courts argument. Even though the court viewed and agreed that the surveillance videos are similar, but not the same is prejudicial against Plaintiff. These exhibits should have played a material role had judge fairly considered them. The judge is not an expert in video surveillance and only an expert analyst would be able to authenticate and verify whether or not it was edited, tampered, with or credible.

The Court, therefore wrongly denied Plaintiff's Motions to strike. John Hassard, MS, CPP, CFE, LPC is an expert retail security expert who rendered an extensive independent report on the incident involving Plaintiff and Saks Fifth Ave. (Ex. J) Mr. Hassard determined that Saks had policies and procedures the require compliance by its associates. Mr. Hassard also reviewed the videos produced at the last hour by Defendant and determined that there were several discrepancies that warranted further review and explanation that could only be completed by expert forensic analyst.

### Conclusion

The District Court should not grant Saks summary judgment on Plaintiffs 42 U.S.C. claim. Plaintiff provided the court with ample evidence of intentional discrimination and denial of his right to contract. The matter should have been set before a jury. Plaintiff respectfully requests that the 9th Circuit Of Appeals send the case back to district court for trial. In an effort to get away with its blatant discrimination, Saks offered the court the excuse that a white female sales associate misidentified the black plaintiff as someone who had harassed/assaulted her earlier in the day, this was all a fabricated well-coordinated intentional lie. The court never compelled Defendant to produce any requested document for 3 years, then allowed Defendants to introduce evidence after discovery was closed. Plaintiff provided more than a sufficient amount of evidence for the court to consider, but did not. The courts by continuing to dismiss these types of cases is perpetrating that discrimination and continuing to deny black Americans equal protection under the law.

RESPECTFULLY SUBMITTED THI 2nd day of November 2023

*Manuel G*
Manuel Gray
Plaintiff Pro se